### PRUDENTIAL INS. CO. OF AMERICA v. PEARSON et al.
#### No. 9796.

District Court, W. D. Missouri, W. D.

June 25, 1938.

Michaels, Blackmar, Newkirk, Eager & Swanson (by Mr. Henry Eager and Kenneth E. Midgley), of Kansas City, Mo., for plaintiff.

McVey, Randolph, Smithson & Garrity (by Mr. Edmund McVey), of Kansas City, Mo., for defendants.

OTIS, District Judge.

This is an action for a declaratory judgment brought by an insurance company, as plaintiff, against the beneficiaries named in a certain policy of life insurance, as defendants. The policy was issued March 7, 1925. The insured, Joseph C. Means, died November 5, 1935. Premiums were paid to March 7, 1933. The premium due on that date was not paid nor was any premium paid thereafter. The insured had borrowed from the company on the security of the policy a total amount, with interest due, of $896.76 and was indebted to the company in that amount when he died. The controversy between the parties turns upon the term of extended insurance to which, under the policy, the insured was entitled after the policy lapsed for non-payment of premiums. By plaintiff's theory that term ended before the insured died; by defendants' theory it did not end until after his death.

1. The only provision in the policy bearing immediately upon the subject of extended insurance is the following:

"*If this Policy,* having lapsed or become forfeited as specified in the clause, 'Paid-up Life Policy', above, *be not surrendered for its Cash Value or for a Paid-up Life Policy, the Company will put in force* in lieu of this Policy, without any action on the part of the Insured, *a non-participating Paid-up Term Policy* for the full amount insured by this Policy with no provision for Disability benefits, *the date of such Paid-up Term Policy to be the due date as specified on the first page hereof to which premiums on this Policy have been paid, and to continue in force for the term indicated in the following table;* provided, however, that the Insured shall not have the right to borrow on such Policy and that *if there be any*

*indebtedness to the Company on account of this Policy* the amount of such Paid-up Term Policy shall be the full amount insured by this Policy less the amount of such indebtedness, with no provision for Disability benefits, and *the term for which such Paid-up Term Policy shall run shall be changed to that term for which the Cash Surrender Value of this Policy herein specified, after deducting such indebtedness, will carry the modified amount at Single Premium Term rates.* The Paid-up Term Policy will be delivered on the legal surrender of this policy."

The italicizing is ours and is designed to indicate the language necessary to be considered in this case.

Clearly the provision touching extended insurance presents two possible situations: (1) Where the insured has borrowed nothing on the security of the policy; (2) where the insured has borrowed on the security of the policy and is indebted to the company. Let us apply the provision to each of these two situations.

If the insured has borrowed nothing on the security of the policy and does not surrender the policy "for its Cash Value or for a Paid-up Life Policy", then the agreement (and the only agreement) of the company is that it "will put in force * * a non-participating Paid-up Term Policy for the full amount insured * * * to continue in force for the term indicated in the following table: * * *."

The "table" immediately follows. It appears from the "table" that at the end of eight years one who has paid premiums for that term and owes the company nothing will be granted a "Paid-up Term Policy" for "5 years and 317 days."

It cannot be contended that there is anything whatsoever in the policy that makes it doubtful whether the term of extended insurance is anything other than that set out in the table. The measuring stick by which the term was fixed by the company is not described. It is not left to the insured to conclude that a greater term would result if the measuring stick were accurately used, because no measuring stick is indicated.

The second possible situation presented by the provision touching extended insurance is where the insured has borrowed on the security of the policy and is indebted to the company. In that situation it is provided (it is the only provision on the subject).

that "the term for which (the) Paid-up Term Policy shall run shall be changed" (i. e. from what it would be in situation No. 1) "to that term for which the Cash Surrender Value of this Policy herein specified" (and only in the table is any cash surrender value *specified* so that, incontrovertably the reference is to that specification), "after deducting such indebtedness, will carry the modified amount at Single Premium Term rates." Here also the extended insurance following lapse is determined absolutely by the table. There is no other provision anywhere relevant to that matter.

If the beneficiaries cannot rely on one or the other of the alternative parts of the provision set out, they have nothing to rely on.

There is not one sentence in the whole policy nor any group of sentences, even if interpreted most strongly against the company, whereby the company agrees that the entire amount of the "reserve" of the policy shall be used as a single premium to purchase extended insurance. The very elaborate and extended argument in the case concerning what is the "reserve" on the policy and the method by which it shall be computed is entirely beside any real question in the case. The only agreement of the company (there is no ambiguity about that) is to give extended insurance for a period stated in the table or solely determinable therefrom.

If the term of extended insurance is fixed by the Table, then that term had ended before the insured died.

■ 2. At the oral argument after the submission of briefs, we asked learned counsel for defendants to point to any provision in the policy, other than that we have discussed here, granting or relating to extended insurance. Counsel asked time to submit a written memorandum. We now have that memorandum. Therein counsel suggest that Section 5741, R.S.Mo. 1929, Mo.St.Ann. § 5741, p. 4388, provides that no policy of life insurance shall be forfeited for nonpayment of premiums but that, upon lapse, extended insurance shall be granted for such term as may be purchased by a single premium computed *in the manner set out in the statute*. The reliance upon this statute comes somewhat late in the case. It has not heretofore been referred to and is not referred to in the briefs of the parties nor do we see that it is of any value.

Learned counsel say that the provision in the policy for the computation of "reserve" is more favorable to the insured than the method of computation under the statute and that they accept the policy provision. That may be done. Gooch v. Metropolitan Life Insurance Co., 333 Mo. 191, 61 S.W.2d 704. Nothing, however, in Section 5741 provides that any other reserve shall be used in the purchase of extended insurance than a reserve calculated in the manner set out in the statute.

■ The insured, indeed, may accept a provision in a policy more favorable than the statute. If the policy provides for extended insurance for a greater period than the statute requires, he can reject the statute and hold the company to its contract. What the insured cannot do is to distort the statute out of all resemblance to its intended significance. Where the statute provides that there shall be extended insurance for such a length of time as will be purchased by a single premium calculated in a specific manner, the insured cannot reject the manner for calculating the single premium and still rely on the *statutory* provision for extended insurance. He still may rely, of course, on the *policy* provision for extended insurance.